UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE

CRIMINAL NO.

|  |  |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) |
| | ) |
| | ) |
| | ) |
| JING "TONY" CHO, | ) |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |

VIOLATION:

2003 DEC 17 P 3: 29

18 U.S.C. § 1005
(Criminal Copyright Infringement)

U.S. DISTRICT COURT
DISTRICT OF MASS.

**03**CR**10401**RWZ

## INFORMATION

THE UNITED STATES ATTORNEY CHARGES THAT:

### INTRODUCTION

At times pertinent to the Information:

1.    JING "TONY" CHO ("TONY CHO") was a resident of Massachusetts and was

employed as a manager at a Citizens Bank branch, located in West Roxbury, Massachusetts.

2.    Citizens Bank was a federally insured bank with branches throughout

Massachusetts.

3.    Equiserve, Inc. was a Delaware corporation with its principal place of business in

Canton, Massachusetts.

4.    KAM WAI CHUI ("CHUI") was employed as a "Processing Associate" at

Equiserve's Canton facility.

### OVERVIEW OF THE SCHEME

5.    CHUI engaged in an elaborate scheme to defraud shareholders of corporate stock

held in accounts at Equiserve, whereby he diverted stock from legitimate accounts into phony

accounts of his own creation, ordered the sale of the stock, and directed the proceeds of the sales

to addresses controlled by his girlfriend and himself. Using a dummy bank account set up at

Citizens Bank by CHO, CHUI was able to convert the proceeds of the sale to his own use.

## *Equiserve's Business*

6. Equiserve was in the stock transfer business, in which publicly traded

corporations retain a company like Equiserve to perform electronic transfers of their stock. One

of the principal benefits of this service is that it enables a corporation and its shareholders to

trade stock without the inconvenient and costly task of redeeming paper stock certificates.

7. Equiserve also offered a related service to shareholders of its corporate clients

whereby it allowed them to hold shares in personnally-directed accounts. Account holders could

buy or sell shares by instructing Equiserve either by phone or mail, or on its website. Account

holders would pay Equiserve a nominal fee for each transaction. Unlike a traditional stock

broker, however, Equiserve did not provide shareholders with investment advice.

8. When Equiserve received a sell order from an account holder, it would sell the

shares at prevailing market prices and, unless otherwise instructed, automatically would send a

check of the proceeds by mail to the account holder's address of record.

9. Equiserve's practice was not to send a record of the transaction to the account

holder.

## *Chui's Role at Equiserve*

10. CHUI was employed at Equiserve as a "Processing Associate" in the "Transfer

Operations Department" at Equiserve's Canton, Massachusetts facility.

11. When an account holder placed a stock transfer order with Equiserve, the order

would be conveyed to the Transfer Operations Department, where Processing Associates like

2

CHUI would enter the transaction information into Equiserve's computer system, which in turn would execute the transaction.

12.     Processing Associates gained access to individual accounts by entering a unique user name assigned by Equiserve and a password known only to the user.

### *Chui's Scheme to Siphon Shares from Equiserve Accounts*

13.     Beginning in approximately June 2001, using his unique username and password to gain access to Equiserve's system, CHUI opened numerous phony shareholder accounts. The accounts bore the names of persons who had not authorized their opening, as well as social security numbers that either did not match the names or did not exist at all.

14.     The addresses CHUI listed on these accounts were addresses controlled by his girlfriend, Jic Ling Cho, including Cho's home address in Quincy, Massachusetts, her parents' address in Allston, Massachusetts, as well as a Post Office Box that she had opened under a false address in Allston. Jie Ling Cho is TONY CHO's sister.

15.     Using his username and password to gain access to Equiserve's system, CHUI directed the system on numerous occasions to divert stock from established shareholder accounts into the phony accounts he had created, knowing that he did not have the authorization of the account holders themselves.

16.     The dollar value of the stock transfers ranged from the hundreds to the tens-of-thousands of dollars.

17.     Once transferred, the stock would reside in the phony account for as long as a few months or as little as a day. In either case, CHUI often would transfer stock among several phony accounts in an effort to make his transactions more difficult to trace.

3

18.     CHUI ultimately transferred most of the shares into phony accounts that bore the nearly identical names "Daniel Chang," "Daniel Chong," or "Daniel Zhang." No one by any of these names had opened an account at Equiserve.

19.     CHUI then would contact Equiserve either by phone, mail or internet, purporting to be "Daniel Chang," "Daniel Chong," or "Daniel Zhang," as the case may have been, and would order the sale of shares from the account.

20.     Once Equiserve sold the shares, it would send the proceeds by check to the address of record on the account; that is, addresses that Jie Ling Cho controlled.

21.     CHUI knew that because banks require proof of identification for certain transactions, including cashing checks, withdrawing cash and opening new accounts, he would not be able simply to cash the Equiserve checks. To evade the proof-of-identification requirement, CHUI sought out and obtained the assistance of TONY CHO, the assistant manager of a Citizens Bank branch in West Roxbury, to open up an account at Citizens in the name of "Daniel Chang," someone whom TONY CHO had never met. Establishing the account allowed CHUI to deposit the Equiserve checks (as deposits do not require proof of identification) and to write checks off the account.

22.     On approximately August 27, 2001, TONY CHO in fact opened savings and checking accounts at Citizens Bank in West Roxbury, Massachusetts in the name of Daniel Chang, knowing that name to be false and, in so doing, intending to deceive the officers of the bank about the identity of the true account holder, namely CHUI. The address of record on the accounts was 261 West Street, # 2, Boston, Massachusetts 02169, a variant of the address where Jie Ling Cho and CHUI lived, namely *263* West Street, *Quincy*, Massachusetts 02169.

4

24.    At CHUI's request, Jie Ling Cho would retrieve the checks mailed to the address to which she had access and deliver them to CHUI, who in turn would deposit it into the Daniel Chang accounts at Citizens Bank.

25.    Once the checks from Equiserve were credited to the Daniel Chang bank accounts, CHUI would withdraw the funds by check or, with the further assistance of TONY CHO, by cash.

## COUNT ONE

### False Bank Entry (18 U.S.C. § 1005)

26.    Paragraphs 1- 25 are realleged and incorporated by reference as though fully set forth herein.

27.    On or about August 27, 2001, in the District of Massachusetts,

### JING "TONY" CHO

the defendant herein, did knowingly make a false entry in the book, report or statement of an insured bank with intent to deceive such bank and its officers; to wit, in his capacity as a Citizens Bank employee, CHO completed an account opening authorization record in the name of "Daniel Chang," with the address "261 West Street, Boston, MA 02169," knowing that the real account holder was Kam Wai Chui, who lived at 263 West Street, Quincy, MA 02169.

All in violation of Title 18, United States Code, Section 1005.

Date: December 17, 2003

MICHAEL J. SULLIVAN
United States Attorney

JONATHAN MITCHELL
Assistant U.S. Attorney

5