UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
                              )
UNITED STATES OF AMERICA      )
        Plaintiff             )
                              )
v.                            )
                              )
                              )        CASE NO. 03-Ccr-10401-RWZ
JING "TONY" CHO               )
        Defendant             )
                              )
```

## SENTENCING MEMORANDUM

## I. INTRODUCTION

On December 17, 2003, a One Count Felony Information was filed in the United States District Court, at Boston, Massachusetts charging Jing "Tony" Cho with making a false bank entry, in violation of 18 U.S.C. § 1005. On or about June 30, 2003, the United States Attorney's Office for the District of Massachusetts and the Defendant entered into a Proffer Agreement whereby the Defendant Tony Cho agreed to provide truthful information in exchange for consideration for Downward Departure based upon substantial assistance and pursuant to United States Sentencing Guidelines § 5K 1.1. During the months before this change of Plea Hearing, Cho has engaged in continuous cooperation with the Government. Despite Cho's cooperation, the Government has failed and otherwise refused to file a Motion for Downward Departure based upon substantial assistance pursuant to U.S.G. § 5K 1.1.

Cho maintains that the Court should sentence this case outside of the Guidelines and should sentence the Defendant the equivalent of a Downward Departure of at least five (5) levels. The Government's failure to file for Downward Departure undervalues Cho's level of

cooperation and substantial assistance. The Defendant accepts responsibility for his actions and well not excusing his actions, submits this Memorandum in order to place his conduct in context for purposes of sentencing. Letters from family, friends and business associates are attached hereto collectively as Exhibit "A".

Nothing in this Memorandum is designed to excuse the Defendant's conduct. It was wrong and the Defendant understands and acknowledges it. However, even where there may be no excuse, there must be understanding to arrive at a just and fair sentence. This sentencing Memorandum addresses in detail why Cho should receive a sentencing commensurate with a sentence under the Guidelines with a Downward Departure. In addressing these issues, this Memorandum describes the breadth and quality of Cho's cooperation, as well as his lack of financial benefit from the underlying offense.

## II. BACKGROUND

As a historical framework of Jing "Tony" Cho's life is contained in the Pre-Sentence Report, it will not be reiterated here in at length. Jing "Tony" Cho is a 29-year-old male and citizen of the Republic of China. Cho has lived in the Commonwealth of Massachusetts since he was approximately 11 years old, when he traveled to the United States with his family to find a "better life". Cho lived in his maternal grandmother's apartment in Brooklyn, New York with his family, however soon thereafter moved to Allston, Massachusetts (approximately 9 months later), because his parents were unsuccessful in gaining employment in New York. Upon moving to Allston, the family lived with the paternal Aunt's house which already housed his paternal Uncle's family, therefore the Cho family lived with two other families in a two bedroom apartment for approximately three years.

2

The Defendant entered the Boston public school system in the fourth grade, at a time when he did not speak any English. Cho took bilingual courses and by the time he took the entrance exam for the John J. O'Bryant High School, his command of the English language "good". Cho worked very hard and obtained his high school degree and enrolled at Boston University from September 5, 1995 until May 16, 2000, when he graduated with a Bachelor of Arts Degree in Economics.

While attending school at Boston University, Cho was employed part-time at the Harrison Conference Center located in Boston where he was responsible for setting up conference and visual aid displays, Cho held this job from 1994 to 1998.

On or about October 19, 1998, Cho became employed with Citizen's Bank where he started as a Bank Teller, was promoted to Assistant Branch Manager and then later promoted to Quality Assurance Manager, until his termination on April 14, 2003.

During the time that Cho worked as a Bank Teller for Citizen's Bank, in the Allston Branch, his common law brother-in-law Kam Wai Chui requested that Cho open an account for Chui's friend, Daniel Chang with an address of 261 West Street, Boston, Massachusetts 02169. Cho opened this account on August 27, 2001. The Defendant acknowledges that at the time he opened the account in the name of Daniel Chang, he was not presented with proof of identity of the account holder, in violation of the bank procedure. Chui explained that Chang was his friend who needed the bank account opened. Thereafter, Cho approved certain checks being deposited and funds withdrawn by either a cash withdrawal or with a Cashier's Check between September 14, 2001 and June 1, 2002.

At the time, Cho was not aware that Kam Chui was operating a scheme of diverting shares of corporate stock from his employer, Equiserve, into dummy accounts which he

controlled in issuing fraudulent checks to himself under the name of Daniel Chang. Moreover, Cho was not aware that Kam Chui had set up fraudulent accounts at Equiserve under the name of Daniel Chang or that the Equiserve checks were payable to a non-existent person, Daniel Chang. It is undisputed by the Government that Tony Cho did not benefit financially from Kam Chui's fraudulent scheme.

After he was summoned and charged in this Court, Cho entered into a Proffer Agreement with the United States Attorney's Office dated June 30, 2003 and agreed to provide truthful information as requested by the Government for the purpose of a potential Downward Departure pursuant to U.S.S.G. § 5K 1.1.

As part of his proffer and in order to assist the Government, on June 30, 2003, and on August 27, 2003, Cho met with representatives of the Government, including the United States Attorney's Office for the District of Massachusetts, and Jerry Carmody a United States Postal Inspector, Agents and provided details about opening the account for Chui; authorizing Chui to deposit checks and withdraw funds into the Chang account.

Cho also provided information at the request of the Federal Agents, regarding the activities and background of Kam Chui, who at the time was on the run and provided what information he knew about Kam Chui's collateral contacts. In addition to providing this information, Cho also told the agents about his meeting with Chui after being contacted by Federal Agents. Cho also offered to wear a wire and testify before a jury and provide testimony in Court for sentencing purposes at the request of the Government.

Notwithstanding Cho providing valuable information to the Government at a potential great personal loss, the Government has not placed Cho before a jury or Sentencing Court, nor

allowed him to further participate in the proceedings. In this case, the Government has not filed a Motion for Downward Departure pursuant to U.S.G. § 5K 1.1.

## III.  ARGUMENT

A.    **Blakely Arguably Renders the Sentencing Guidelines Unconstitutional**

In 1987, the United States Congress enacted a so-called sentencing reform measure that became the United States Sentencing Guidelines. Aided by a legislatively created United States Sentencing Commission that remains fully accountable to Congress, the legislative branch effectively removed a district court's previously unfettered discretion in sentencing defendants and replaced it with a mandatory sentencing structure. See Mistretta v. United States, 488 U.S. 361, 377, 393-94 (1989). In the post-Sentencing Guidelines system, federal district court judges must sentence defendants according to a comprehensive guideline regime that awards enhancements and departures based upon certain specifically delineated factors. See id.

Following the Supreme Court's landmark decision in Blakely v. Washington, 24 S.Ct. 2351 (June 24, 2004), courts have wrestled with the question of whether Blakely render the Sentencing Guidelines unconstitutional in their entirety or whether the holding merely limits a sentencing court to a guideline analysis that excludes factors not considered by a jury. Based upon existing Supreme Court precedent, the latter option is arguably the correct result.

The United States Supreme Court has long held that whenever a court finds a portion of congressional legislation unconstitutional, it should sever the objectionable portion of the statue and allow the unobjectionable portion to exist as fully operable law. Regan v. Time, Inc., 468 U.S. 641, 652 (1984) (plurality opinion). The Supreme Court, however, has held that a court should deem an entire act unconstitutional if "it is evident that [Congress] would not have enacted those provisions that are within its power, independently of that which is not." Alaska

Airlines, Inc. v. Brock, 480 U.S. 678, 684 (1987).  As the Alaska Airlines Court explained, "the unconstitutional provision [of the act] must be severed unless the statute created in its absence is legislation that Congress would have enacted." 480 U.S. at 684.

Congress would not have enacted the type of sentencing scheme mandated by Blakely. In enacting the Sentencing Guidelines, Congress established a multistage sentencing rubric complete with enhancements and reductions.  See Booker, 2004 WL 1535858, at *2.  "The aim to individualize sentences within a system of rules to achieve both uniformity and proportionality, certainty and fairness in sentencing." Mueffelman, 2004 WL 1672320, at *9. Congress believed it could achieve uniformity in sentencing by establishing a complex scheme that considered a variety of factors including criminal history, nature and seriousness of the offense, and other enhancing or mitigating offense specific characteristics.  Congress did not create a system where, as the holding in Blakely requires, courts would be relegated in most instances to sentencing a defendant according to his or her base offense level.

Nor did Congress create a system where juries-not judges-would decide the enhancing factors.  In enacting the Sentencing Guidelines, Congress did not rewrite the United States Criminal Code.  Mueffelman, 2004 WL 1672320, at *9.  Rather, Congress attempted to reform activities central to the purview of the judge including sentencing a defendant within the broad ranges of existing criminal law.  Id.  Unquestionably, the United States Sentencing Commission's role in the guideline promulgation process was the establishment of sentencing factors designed specifically and solely for the operation of the judge as fact-finder.  Id.  If, as the Blakely Court suggests, a judge cannot fulfill her role as fact-finder without violating a defendant's Sixth Amendment rights, then the judge cannot act in accordance within the purpose and letter of the United States Sentencing Guidelines.  Hence, the guidelines, if operable at all,

would function in a manner at variance with clear legislative intent. As a result, <u>Blakely</u> renders the Sentencing Guidelines unconstitutional.

The unconstitutionality of the Sentencing Guidelines allows this court discretion to impose a sentence within the wide range proscribed by the United States Code. In essence, the court is free to consider any aggravating or mitigating factor it deems appropriate and to assign whatever weight it chooses to this factor. The court must not, treat the Sentencing Guidelines as unconstitutional in their entirety and then sentence the defendant to the previously applicable sentencing range by using the Sentencing Guidelines a "guidelines." Indeed, in employing such a remedy, "the court would be saying with its mouth that it acknowledges <u>Blakely's</u> [effect] on federal criminal sentencing, while, with its hand, demonstrating a practical disregard for it. The actual result of utilizing [such an approach] would be to ignore the constitutional impact of <u>Blakely</u> and to conduct a fiction that a sentence should be at a specific level, having arrived there by the same unconstitutional steps <u>Blakely</u> expressly forbade." <u>United States v. Montgomery,</u> 2004 WL 1535646, at *3-*4 (D. Utah July 8, 2004) (Stewart, J.). Rather then engage in an unconstitutional fact-filling process forbidden by <u>Blakely</u>, the court should impose a sentence consistent with considerations of equity and fairness.

In the present case, equity and fairness compel a sentence of one year probation, rather than the sentence requested by the Government. Mr. Cho is a young man who had a bright and encouraging future in the banking industry which came to a crushing halt after being taken advantage of by a family member. Cho cooperated with the Government and provided valuable information to the United States Attorney's Office and Federal Agents and offered to testify at the Court proceedings and/or Sentencing Proceedings of Kam Chui.

Imposing a sentence of imprisonment as requested by the Government will not serve the ends of justice. Instead, a sentence of straight probation is a just result. Moreover, as a result of this conviction, Cho faces deportation back to China, a country where he has not lived since he was a child and where he has no immediate family, as a result of this matter. In lieu of the great personal loss as a result of this criminal conviction, the lack financial benefit in this case, a sentence of one year probation is a just result and is a result compelled by equity under the circumstances. The Court, therefore, should exercise its considerable discretion post Blakely and impose upon Mr. Cho a sentence of one year probation.

## IV.  CONCLUSION

For the foregoing reasons, Jing "Tony" Cho requests that this Court to sentence him to a term of one year probation.

Respectfully submitted
Jing  "Tony" Cho
By His Attorney,

Raymond Sayeg, BBO #555437
Law Offices of Raymond Sayeg
Four Longfellow Place, 35th Floor
Boston, MA  02114
(617) 742-1184

Dated:  November 12, 2004

## CERTIFICATE OF SERVICE

I, Raymond Sayeg, hereby certify that a true and exact copy of the foregoing Sentencing Memorandum was served this 12 day of November, 2004, by hand delivery mail upon United States District Attorney, Jonathan F. Mitchell, U.S. Attorneys Office, 1 Courthouse Way, Suite 9200, Boston, MA 02210.

Raymond Sayeg

# Exhibit A

Belynda M. Lai
29 Harriet Avenue
Quincy, MA 02171
(617) 319-5746

November 1, 2004

To the Honorable Judge:

My name is Belynda Lai and I am writing this letter on behalf of my husband Tony Cho. I am 27 years old and currently employed at Investors Bank & Trust as a Reporting & Compliance Specialist. I hold a part time job at Gourmet Oriental as a hostess on Friday and Saturday nights. I have known Tony Cho for 13 years. We met at John D. O'Bryant High School and have been together ever since. In regard to Tony's character, he is an honest, dependable, respectable, hardworking and compassionate man who succeeds in everything he puts his mind to. I feel blessed to be a part of his life. Without him, I will not be who I am today.

In 1998, while attending Boston University, Tony was happy working at Harrison Conference Center as part-time Conference Aide. As a Conference Aide, his responsibility was to setup meeting rooms and audiovisual equipment. Although Tony was comfortable and satisfied at his part-time job, I suggested he should pursue a career at Citizens Bank. After a month or so, Tony was employed as a part-time sales associate. It was difficult for Tony at first. His confidence was low due to a language barrier and lack of ambition. Despite these barriers, Tony is a new man. He has overcome his obstacles and proven to both himself and his friends and family that he has what it takes to succeed. I have never been more proud of this man and I am honored to have married him. We have often spoken of starting our life together as a family, and I honestly could not imagine our family without him.

Within Citizens Bank, Tony eventually climbed the corporate ladder and was employed as an Assistant Manager. While he held this position, he mentored a man named Diogenes Burgos. Diogenes has dyslexia and was having a hard time meeting his goals. Tony took his time and patience and trained Diogenes to build his confidence to excel in his position. Through all of his hard time and work, Diogenes became one of the top sales associates in the region. In recognition of his success, Diogenes was rewarded a company trip for two to Aruba. Although Diogenes could have brought either one of his family members, girlfriend or friends he chose to take Tony on the trip. This was his way of saying "thank you" for recognizing his ability to succeed.

About a year and half year ago, we found out about this situation. Then, what was his strength became his weakness. Someone whom he trusted and thought was his family took advantage Tony Cho. This tore him apart as trust is such a big part of who Tony is today. I envy Tony, as he is a simple man who has as much patience as he has trust. If only I had just a small part of the character he has, I have many regrets pushing him into a change perhaps he didn't need to make.

Within this one year, I have learned more about Tony than I thought. His ability of adapting to such a difficult situation proves he is a man with a lot of will power. I recall during a meeting with his lawyer, Raymond Sayeg, Raymond asked, "Tony, aren't you upset at Wai Kam?" Tony just quietly shook his head because he has no hatred in his heart. On the other hand, he feels remorse for what has happened to his family, friends and all who had been put through this ordeal. Through all of this, he has an extremely big heart and still holds the ability to trust and have patience with others. Although the phrase, "Things happen for a reason" is so often used, I cannot imagine why this would happen to someone like Tony.

We have been very distressed about this case. One of our biggest fears is whether he will be deported back to China. Then I asked Tony if he is scared to be deported or what will happen to us if that day comes. His answer was further proof of his character. It was "I am scared. But at this point, just hope for a better tomorrow. I will treasure every moment with you and my family." After hearing his response, I cried as I

felt that I was truly blessed to be a part of his life. He was bought up in a traditional Chinese family. His family is very giving, warm and hardworking. Tony holds all of those characteristics. With a criminal record, which will limit his job opportunities, I can honestly commit to the fact that he can still provide a good future for our family, because he is a hardworking man who have learned from mistake. Tony has deep regret for letting this whole situation negatively affect both him and others. Since this case happened, he has been paying for it every moment of his life.

Your honor, placing Tony on prison term, an environment with negative influences, will not help him in anyway. This will just traumatize and harm the good nature of a good man. He has no intent of breaking any law and will never again do anything to harm anyone. He has admitted to bad judgment and will be ever mindful of this in the future. Tony is a dignified, trustworthy and respectable individual. I ask that you have compassion for a man who made a mistake, a mistake that cost him his career. And a lesson learned on the value of family and freedom.

Sincerely,

Belynda Lai

Connie Chu
12 West Squantum Street
N. Quincy, MA 02171

October 1, 2004

To the Presiding Honorable Judge:

My name is Connie Chu and I was born here in Boston, MA. I am employed with J.P Morgan Chase as a Fund Accounting supervisor.

I have known Tony Cho for thirteen years; he is a great friend of mine. I met him through a mutual friend and have kept in touch ever since. Throughout these years, I have gotten to know Tony very well. We share similar values, which is to live the American dream, to establish a career and to make our parents proud of us. Our parents are immigrants from China and we are the first generation to attend college. In our culture we were taught to work hard for our goals and always strived for the best. We bare many responsibilities in a typical Chinese household for our parents do not understand or speak the English language.

Tony's character is an honest, hardworking, dependable, generous and respectable man. Maybe sometimes you can say he is too generous that he would "always" lend a helping hand without a doubt. About five years ago, my father passed away with liver cancer, Tony went above and beyond what a good friend would do. He went that extra mile to offer me comfort and guidance through these tough times. He would always tell me I would get pass it and become a stronger person and that nothing is "Impossible". Most importantly he lent a friend in need a helping hand and a great pair of listening ears. Aside from this situation I have witnessed Tony helped many of his friends on countless occasions. There is one thing I have learned to acquire from Tony... that is his positive attitude towards life.

When he confronted me of his current situation, it was a very hard thing to believe. The fact that he did break the law, I believe it was pure "naiveté" on his part. This news has taken a toll on everyone who is a part of Tony's life. Because of this mishap, his family and close friends were saddened by it. Yet Tony still remains positive about life and knows that this is a "huge" mistake that he has made and that he had learned from it. He trusted someone he should not have. It has been almost two years and Tony is waiting patiently by putting his life on hold for the consequences of his wrongdoing. I feel that prison time will not help Tony in the least bit. I do not just state this due to our friendship but I truly believe this to be true. It is to my understanding that no one is perfect and people do make mistakes. Tony has never gotten into trouble with the law nor does he have a criminal lifestyle. I believe that prison terms are not in the best interest for Tony. I ask that you do not change the direction of Tony's life based on a mistake.

Sincerely,

Connie Chu

22A Carlmark Street
Quincy Massachusetts 02169

November 6, 2004

To Whom It May Concern,

My name is Giang T. Le and I am writing this letter in behalf of Tony Cho. I have personally known Tony for over ten years. While we both attended different high school Tony and I met through mutual friends. Both my fiancée and I are best friends with Tony and his wife Belynda.

Among our close circle of friends Tony has always been known to be reliable, caring, ethical, and a hard worker. He is an all around good guy. Tony is always someone I can call on if I needed help with anything in my life, from someone to lend an ear to listen, to needing a ride from the airport. He is always generous with his time as well as his material things. Tony came from a caring, trusting, generous and hardworking family, whom instilled in him all their good traits and values. I have been to dinner countless time over the years at Tony's house where we talk and laughed over his mom's delicious cooking. Their doors are always graciously open as long as one can bring one's appetite I have watched Tony graduated from college and taken on his first professional job at Citizens Bank, where he worked diligently from a Sales Associate to a Branch Manager. I was very impressed, because he got through to his upper management with his honesty and integrity. I too worked at Citizens Bank at one time, and the people around me whom made it to management are almost always "suave, smooth talkers". and only says what they think other wants to hear. But not our Tony. Tony has always been honest. I was happy to see him succeed in his career without compromising who he truly is as a person.

It breaks my heart to see the kind of trouble Tony is in today. I truly believe that Tony gotten himself in this situation because of his trusting ways. Tony mistakenly placed his trust in his brother in law whom he thought was an ethical caring family member, and not a selfish greedy individual. The once happy teasing family that I've gotten to know around the dinner table is now much more quiet and subdued. Friends who now come over for dinners are asked by Tony speak more jolly to help distract his parents form Tony's problem for a brief time that we are there.

I believe Tony is an asset to our society. He had always had a job even in high school. Tony does not shrink from hard work. Please do not changed Tony's whole world due to a mistake of misplaced trust.

Please feel free to contact me with any questions.
Sincerely,

Giang T. Le

Lo-an T. Le
Controller
Kliman Law Offices
84 Rowe Street
Newton, MA 02466
Tel: 617-928-3350
Fax: 617-928-1937
llc@klimanlaw.com

November 1, 2004

To Whom It May Concern:

I have known Tony Cho now for more than 12 years and I cannot stress how important his friendship means to me. Tony and I met during sophomore year in high school and despite the fact that we both went to two separate high schools; Tony was always there when I need him the most.

To those of us who know and love Tony we cannot start to list out all his great qualities on paper, but I can try. Tony can be described as a caring, honest, and congenial person. He throws himself wholeheartedly in his surrounding and is very much in tune to others' needs. Friends and family would often go to Tony for his opinions as an intellectual ethical thinker. Tony rarely lets us down in his rational and will forever be looked upon for his advice.

Tony plays an active role in our social life. Tony organizes events and volunteers his time and effort to help all his friends and family. Tony has a very trusting and generous nature, so much so that I think that is the reason for his demise.

When I first heard about the circumstance that Tony is in, I cannot begin to grasp the conviction of it all. When Tony inform me about his brother in law jeopardizing his career in that respect, I can see the unfairness of life seething in Tony's eyes. To me, Tony's promising life and successful career has been washed away by the revelation of his brother-in-law's deceit.

Tony's attitude towards life has always been humble and acceptance for both the good and the bad. He has always learn in life to accept or tolerance his future as how it's handed to him. Tony's career started in a very similar pattern. Tony works hard and it has pay off. He has obtained a successful career with his diligent work but has never really aspired for it. All his life, Tony does what is to be expected. So it's no surprise to me how patience and tolerant Tony has been with this whole situation. This cannot happen to more promising individual. This whole story has taken quiet a toll on Tony's life and on his family's. The happy go lucky family I have once known and love has became quiet and dismal over their son's future.

Please feel free to contact me at the number above with any questions pertaining to this letter.

Sincerely,

Lo-an Le
195 Summer Street
Watertown, MA 02472

79 Sumner Street
Norwood Ma 02062

November 7, 2004

My name is Rob Xayvethy and I reside with my family in Norwood. Massachusetts. I am currently employed at New England Labor Services since April 2004.

I have known Mr. Tony Jing Wu Cho for the last 10 years. We first met at a mutual friend's party back in high school, and have been best friends since. My friend Tony is a kind, caring, and a very responsible man. Tony has always been there for me, whenever I needed him to help with any problems big or small. The Cho family has known to be very hospitable, and generous to all our friends. Mrs. Cho always offers to cook for us whenever we happen to be over their home. The Cho family has always been very kind and warm to me. I consider them my second family.

As long as I've known Tony, he's always been a hard working individual. Who to me at times seems over worked while he was at Citizens Bank. Even though he worked twelve hours shift, he always have time for friends and family.

When I found out the situation he is in I thought I was having a nightmare. That this nightmare cannot be happening to my best friend. I have long thought that Tony is too trusting, and that one day it will get him into trouble. Tony opened an account for a family member, whom he placed alot of trust in and did never imagine that is was fraud.

Tony is a very honest person who I believe would not knowingly commit any type of fraud. He has already lost the job and career that he loved. Please put this into consideration of not punnishing my best friend.

Sincerely,

Rob Xayvethy

**Jennifer Mong**
6 Canal Park, #606
Cambridge, MA 02141

October 5, 2004

To the Presiding Honorable Judge:

My name is Jennifer Mong and my current age is 27 years old. I am employed at Thermo Electron Corporate Waltham, MA as a Senior Financial Reporting Analyst. I am well aware of the offense that Tony Cho is being prosecuted for and am looking to address, through this letter, my views of Tony.

Tony and I have known each other for just about five years now. We met through mutual friends. I can not say I know him extremely well but I do know he is an honest, simple and sincere guy. I also know deep down he cares about me despite our short friendship. Finding out about this case was extremely shocking to me. Never in a million years could I have imagined Tony facing such charges. Likewise, Tony is shaken by the charges himself but continues to maintain his cool and remains positive about the situation. How else can Tony react to accusations that he did not realize he was committing. I want to say his actions stemmed more from being too naive. He was merely doing favors for his brother-in-law, someone that he trusted. If there is anything he has learned from this life changing experience it is to be more careful of who he meets and who he trusts because he never knows when his trust can be taken advantage of in his everyday life.

Since I have known Tony, he has always worked at Citizens' Bank. He began working as a sales associate and eventually worked his way up to branch manager. Tony had been in this position for quite some years and if he were a little more <u>aggressive</u>, he would have gotten much further in his Citizens' career. However, he chose to stay behind as branch manager. He had several opportunities to advance but chose not to because of his desire to be simple guy. He preferred to stay back and work with the people he enjoyed working with at Citizens.

On a personal note, I wanted to mention that I am originally from San Francisco. My family still resides there and I live here in Massachusetts on my own. Knowing that I am here alone, Tony always thinks of me when it comes to providing me with Chinese soup to keep me healthy. When I go over to his house for dinner he offers me food to bring home knowing that living on my own I seldom have a home-cooked meal.

In conclusion, as I mentioned before, never in a million years would I expect Tony to be charged with such accusations. I trust that people make mistakes unintentionally but his biggest mistake was being too naïve with the people he associates with. Not only was this unforeseen but I believe that Tony will be more careful who he trusts in the future. I pray everyday that this trial will be over soon and I have faith that justice will be served!

Please feel free to contact me with any questions or concerns and I genuinely thank you for taking the time to read this letter.

Sincerely,

Jennifer Mong



# Commerce Bank & Trust Company

March 29, 2004

To Whom It May Concern:

I am writing this letter on behalf of Tony Cho whom I worked with at Citizens Bank for three years. During the time we were working together at the same branch, I have noticed that Tony Cho is a very intelligent, and very responsible. Also, Tony's attitude was out standing. He always went above and beyond to help every customer and other co workers.

When Tony first started working at Citizens Bank, he started as a teller. Then in a very short term, he moved up to a personal banker. A few month later, he got promote to an Assistant Branch Manager position. Not so long after that, Tony got another promotion to be a Branch Manager, which we all admired him.

If you have any further questions, please do not hesitate to call me at 508-871-7119

Sincerely,

Todd Goodrich
Branch Manager
Westborough Office



**CITIZENS BANK**

To whom it may concern,

I am pleased to write this letter in support of Tony Cho. I am confident that Tony brings the kind of energy and preparedness that would make him a valuable addition to any organization.

In accomplishing the goals of his position, as Branch Manager for Citizen's Bank, Tony demonstrated the highest level of professionalism, management, and customer service skills. Tony has an excellent ability to work well with staff. This rare ability to effectively enlist the trust and respect of staff members is due to his strong interpersonal skills. His expertise enabled him to take a struggling non-compliant branch with poor customer service and turn it into a productive compliant branch within months. Tony achieved monthly performance goals and successfully managed the daily operations of the branch and helped to streamline bank-operating procedures. To successfully achieve what Tony has achieved, one must be highly organized, able to meet stringent deadlines, able to prioritize, and have a high regard for exceptional customer satisfaction.

Tony was an innovative, intelligent, and dedicated employee whose diligence made the work environment efficient and productive. He has proven himself to be a very knowledgeable manager whose troubleshooting and analytical skills were relied upon.

I am quite confident that Tony will contribute as much to your organization as he did at the bank and with as much zeal. He has the proper attitude, experience, and drive to become a valued member of your organization. It is therefore with great pleasure that I highly recommend Tony Cho for this position.

Sincerely,

Angela Moultrie
Regional Manager

AM/lh

Kamini Williams
70 Dedham Street
Hyde Part, MA

To whom it may concern:

This letter is in regard to Mr. Tony Cho, a person with whom I have worked with closely at Citizen's Bank for over a year. He is extremely efficient and detail oriented. His job as bank branch manager entailed the processing of client files and confidential bank documents. He was also responsible for the training of new employees and the delegation of daily schedules to bankers. As branch manager all financial and operational responsibilities were placed in his best custody.

Tony has always behaved in a very professional and responsible manner and expected nothing less from those who worked with him. He often puts the bank's interests first, meeting deadlines and commitments, sometimes sacrificing his personal time, to complete daily tasks. His branch remained the top in its region.

It was an extraordinary learning experience for me to be a part of Tony's team. I know him to be an extremely hard-working individual. He considers his work very important and will enthusiastically meet any challenge. I highly respect Tony Cho and recommend him for employment.

If I can be of any further assistance please feel free to contact me at 617-361-0555.

Sincerely,

Kamini Williams

07/01/2004

To Whom It May Concern,

I'm writing to support Tony J. Cho as I have know him for more than 5 years and I believe he is a good person, with a great personality and good moral character.

My name is Edward C. Lee and I used to work for Citizens Bank of Massachusetts as a Branch Manager in Waltham before I joined Sovereign Bank as a Branch Manager in Quincy. I know Tony in 1999 when I joined Citizens Bank. He always shows me he is very hard working, willing to learn and willing to help out new colleagues as well. He enjoy working for the bank and he always try his best to help customers. He got promoted to Assistant Manager and then a Branch Manager all because of his hard work and all his customers like him. He is always very friendly, always show me he is a very kind and honest person. He always work hard to get business and always tell customers whats the best for them. He is very reliable and very dedicated to his work.

On the personal side, I keep in touch with Tony and we hang out sometimes after work. He presents to me he is a very frank and he's a friend that I trust. He always tells me what is good and how I can improve myself as well. Tony doesn't have any bad habits, he love to bowl and I could never see him get into any kind of trouble. He's just a good friend that I wish I could always have him around.

I strongly recommend that Tony Cho is a person who has good character, honest and won't do anything to harm other people. If you have any questions, you can reach me at 617-779-8149 or email me at edwardxx@yahoo.com.


Thank you for your kind attention.

Yours truly,

Edward C. Lee
62 Empire Street Apt.1
Allston, MA 02134